# Exhibit J



|  |  |
|---|---|
| Neel Chatterjee<br>+1 650 752 3256<br>NChatterjee@goodwinlaw.com | Goodwin Procter LLP<br>601 Marshall Street<br>Redwood City, CA  94063<br><br>goodwinlaw.com<br>+1 650 752 3100 |

October 5, 2020

**VIA E-MAIL (ACARLSON@CARLSONCASPERS.COM)**

Alan G. Carlson
Carlson, Caspers, Vandenburgh, & Lundquist, P.A.
225 South Sixth Street, Suite 4200
Minneapolis, MN 55402

**Re:     BI Worldwide's U.S. Patent Nos. 8,766,764 and 9,779,421; Application No. 15/724,115**

Dear Mr. Carlson,

I am writing on behalf of Centrical in response to your July 15, 2020 letter.  For the reasons set forth below, Centrical continues to believe that the BI Worldwide patents (1) are invalid and (2) have no relevance to Centrical's application.  We respectfully decline BI Worldwide's invitation to license, as no license is needed.

With respect to invalidity, Centrical is not particularly affected by your statement that the patent was "heavily vetted by the patent office before it issued the claims of those patents."  This argument, as you surely know, is an argument every single patentee with a § 101 problem makes.  If the premise for which you offer it were true, courts, juries, and even the USPTO (in *inters parte* reviews, covered business method reviews, or *ex parte* reexaminations) would not invalidate patents.  As you surely know, courts are in no way bound by Patent Office determinations of patent eligibility made during prosecution.  *See, e.g.*, *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555 (Fed. Cir. 1985) ("The Examiner's decision, on an original or reissue application, is never binding on a court."); *Belkin Int'l, Inc. v. Kappos*, 696 F.3d 1379, 1385 (Fed. Cir. 2012) ("Suffice it to say here that the courts have the final say on unpatentability of claims, not the PTO.").  In fact, the cases where courts and the USPTO have found patents to be ineligible after a patent issued are too numerous to mention here.

The USPTO's most recent guidance is significant, if not conclusive, on the issue of patent eligibility of the BI Worldwide patents.  In BI Worldwide's currently pending application, the examiner applied the Patent Office's January 2019 Updated Patent Subject Matter Eligibility Guidance ("January 2019 Updated PEG") and rejected all pending claims.  See 6/16/2020 Final Rejection.  These claims are very similar to the claims of the two issued patents that are the subject of your letter.  The examiner's rejection is consistent with numerous Federal Circuit decisions invalidating patents directed to targeted advertising under § 101, including those cases that we identified for you previously.  *See, e.g.*, *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015); *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 887 (Fed. Cir. 2019).

Numerous other problems with the patent exist.  For example, the specification does not describe anywhere an "incentive application engine" that provides multiple incentive applications to be used on different websites (e.g., claim 1 of the '421 patent requires "first" and "second" incentive applications).  Instead, the specification discusses the use of a single "portable incentive application" that is



Alan G. Carlson
October 5, 2020
Page 2

customizable.  *See, e.g.*, '421 patent at 1:52–54 ("The incentive application is both portable onto other sites and is customizable on each site to the information provided on the site.").  Similarly, the charts for the '764 patent claim an "incentive application database" that receives and stores information from two different websites as well as an "incentive application engine" that provides incentives to multiple different websites.  *See* '764 patent at 11:18–54.  The absence of a second website anywhere in the patent specification raises serious questions related to written description and enablement.

We have also reviewed the claim charts carefully.  The claim charts do not show infringement.  Below are just a few examples of the deficiencies in your claim charts.

- Claim 1 of the '764 patent and claim 1 of the '421 patent both require the receipt and storage of "activity information of a first viewer from a provider of a first Web site, the activity information of the first viewer indicating the first viewer's involvement with the *first Web site*," and "activity information of a second viewer from a provider of *a second Web site*, the activity information of the second viewer indicating the second viewer's involvement with the second Web site."  The entirety of your infringement allegation for this requirement is as follows:  "This storage is up to receive information from multiple websites where the information indicates a user's involvement with those websites.  See, for example, Yammer and SalesForce integrations."  This conclusory statement does not come close to showing infringement.  You have not identified in Centrical's system even a single piece of "activity information" indicating a viewer's involvement with a website that would satisfy this limitation.  Nor could you, because the purpose of Centrical's app is fundamentally different than what is claimed in the patents.  The patents discuss providing incentives for user actions on e-commerce websites.  *See, e.g.*, '764 patent at 1:16–20 ("Revenue from websites is primarily driven from the number of visitors who visit a website that either (i) purchase a product or service offered on the website or (ii) generate advertising dollars from advertisers on the website that pay per visitor to a website."); *id.* at 4:33–35 ("Again, the incentives can be used to reward the viewer for visiting the site, purchasing goods on the site, purchasing services on the site, or merely viewing information on the site.").  Centrical does not track website activity information (on e-commerce websites or otherwise) and does not provide any incentives based on such information.

- Claim 1 of the '764 patent and claim 1 of the '421 patent require that the same "database" or "storage" be "configured to receive and store activity information of a first viewer from a provider of a first Web site . . . and to receive and store activity information of a second viewer from a provider of a second Web site . . . ."  In addition to the fact that Centrical does not receive and store "activity information" as claimed, your infringement charts do not identify a single database or storage that stores information, for example, received from SalesForce and from Yammer.  You point to Centrical's website stating that it has "listed all of our data repositories that hold personal data."  Identifying multiple repositories actually demonstrates non-infringement because the databases for the different repositories could be different, particularly if they are tied to different platforms.

- Claim 1 of the '764 patent and claim 1 of the '421 patent require an "incentive application" that is "embedded in the first Web site and the second Web site."  Your charts cite to a definition of



Alan G. Carlson
October 5, 2020
Page 3

- "embedded" as "an adjective referring to items, such as program code or commands, that are built into their carriers rather than associated with or called by them when needed."  Notably, BI Worldwide does not offer any construction of the phrase "incentive application" and ignores the specification's description of the embedding.  *See* '764 patent at 7:14–20.  Your claim charts allege that users of SalesForce, Yammer, SAP Successfactors, and Microsoft Sharepoint can access those systems using a web browser.  However, BI Worldwide has not shown that Centrical's app is "built into" a website rather than simply being "associated with" or "called by" the website when needed.  Indeed, the charts do not identify a single instance where Centrical's tools are built into a website through OBJECT/EMBED tags instead of being simply associated with a particular platform.

- Claim 1 of the '764 patent requires that the "incentive application engine" be resident on a single "memory."  While your charts offer a general definition of "engine," you do nothing to construe the phrase "incentive application engine."  This issue is important because Centrical does not offer an incentive application.  Further, your claim chart does not identify a single memory that contains the Centrical app that is used, for example, both for SalesForce and for Yammer.

As Centrical continues to believe that these patents have nothing to do with Centrical's business, we respectfully decline the invitation to license and consider this matter closed.

Sincerely,

*Neel Chatterjee*

Neel Chatterjee

NC:ds